# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES** | : | **No. 3:07cr144-1** |
| | : | |
| **v.** | : | **(Judge Munley)** |
| | : | |
| **IMANI SIMELANI,** | : | |
| **Defendant** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

Before the court is defendant's motion to sever defendant and suppress evidence. (Doc. 143). Having been briefed and a hearing held, the matter is ripe for disposition.

**Background**

A grand jury indicted the Defendant Imani Simelani and ten other individuals on April 4, 2007. (Doc. 1). The indictment charged defendant with one count of conspiracy to knowingly and intentionally distribute and possess with intent to distribute more than fifty grams of cocaine base (crack) and in excess of five-hundred grams of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). The indictment also alleged that defendant knowingly and intentionally distributed and possessed with intent to distribute cocaine on August 8, 2006. A third count in the indictment charged plaintiff with unlawful and intentional distribution of crack cocaine on January 24, 2007.

After his arrest on these charges, defendant on October 12, 2007 filed a motion to sever the defendant's case from the other ten defendants and suppress

evidence. (Doc. 143). He filed a brief in support of that motion on October 22, 2007. (Doc. 147). After numerous requests for continuances by the government as the case against plaintiff's co-defendants wound its way through the court, and after an order from the court, the government finally filed a brief in opposition to that motion on March 24, 2009. The court held a hearing on the motion on May 27, 2009. After the hearing, the court ordered the parties to file supplemental briefs, if they so desired. The time for filing such briefs has now passed, and the matter is ripe for disposition.

**Discussion**

The court will address each motion in turn.

### A. Motion to Sever Defendant

At the hearing on plaintiff's motion, the parties agreed that the motion to sever was moot, as the other defendants had pled guilty to the charges and will not be going to trial. (See Transcript of Suppression Hearing, held May 27, 2009 (Doc. ) (hereinafter "T.") at 3). As such, the court will deny the motion as moot.

### B. Motion to Suppress Police Identification

Defendant also seeks to suppress the January 24, 2007 identification of him as the driver of a green Mitsubishi Gallant by a Pennsylvania State Police Trooper who stopped that vehicle after it was allegedly involved in the sale of crack cocaine to a confidential informer. He contends that the Trooper stopped his car without probable cause.

2

Pennsylvania State Police Trooper John Gill testified at the hearing on defendant's motion. (T. at 4-31). Trooper Gill related that he had worked for the Pennsylvania State Police since 1990. (Id.). Gill was involved as one of the lead agents in the investigation that led to defendant's arrest. (Id. at 5). He testified that on January 24, 2007 he was working with a confidential informant who he hoped would attempt to purchase controlled substances. (Id.). That informant had assisted the police since 2005, and had been involved in "numerous" controlled buys of illegal drugs. (Id. at 6). The informant had proved reliable in the past, and had been an active informant in the investigation that led to defendant's arrest. (Id.).

On January 24, 2007, Gill met with the informant to arrange a controlled purchase of crack cocaine from Susan Hunsicker, another defendant in the case. (Id.). Gill testified that defendant was using the street name "E" at that time. (Id.). The informant contacted Hunsicker in an attempt to make the controlled purchase, and Hunsicker told them she would meet them in Nesquehoning, Pennsylvania. (Id. at 7). A few minutes later, Hunsicker called back and told the informant she would send "E" instead of making the delivery herself, and that he would be driving a Mitsubishi with a sun roof. (Id.).

Officers then searched the informant and provided that person with marked currency. (Id.). The search revealed that the informant possessed no illegal drugs or money other than that which police gave him. (Id.). Gill testified that the buy was to take place at a CVS drugstore in Nesquehoning Borough in Carbon County,

3

Pennsylvania. (Id. at 7-8). At approximately 8 p.m. on January 24, 2007, he and three undercover troopers were conducting surveillance in the parking lot and observed "E" arrive in a green Mitsubishi Gallant. (Id. at 8). He was the driver of the vehicle, which Gill reported was registered to Susan Hunsicker. (Id.). Gill and the other officers observed "E" exit the vehicle and meet with the informant at a pay phone in the CVS parking lot. (Id.). After this meeting, "E" got back into the car and drove away from the parking lot. (Id.). The three surveillance officers followed him. (Id.).

The confidential informant returned to Gill's vehicle and provided him with crack cocaine allegedly purchased from "E." (Id.). Gill searched the informant again and discovered that he was free of contraband and money. (Id.). The informant told Gill that he had purchased the drugs from "E." (Id.). At that point, Gill contacted the state police in Hazleton to determine if a patrol officer was available. (Id. at 9). Meanwhile, the surveillance officers continued to follow the defendant. (Id.). The officers followed defendant into the adjacent town of Beaver Meadows. (Id.). Just before defendant crossed the border into Hazleton, a State Trooper from the Hazleton barracks, Robert Naprava, stopped him. (Id.). Since the investigation was ongoing and police sought to identify other participants in the alleged conspiracy, Naprava had instructions to obtain identification from defendant and then allow him to leave. (Id. at 10).

Trooper Robert Naprava testified that he was assigned to patrol on January

4

2004, 2007. (Id. at 32). On that day, he was contacted by the state police narcotics unit for assistance in conducting a traffic stop. (Id.). Officers in the state police narcotics unit advised him that they were following a suspect who had "committed a drug transaction." (Id.). They requested that Naprava "intercept" the vehicle and identify the occupants. (Id. at 32). Naprava communicated with the troopers conducting surveillance on the vehicle before he stopped it. (Id. at 33). He stopped a "green-ish" Mitsubishi Galant. (Id. at 32). Before the stop, surveillance officers described the car and provided Naprava its registration number. (Id. at 33). Naprava confirmed that number and the surveillance officers confirmed that Naprava "had the correct vehicle" before he stopped the car. (Id.). Naprava made the stop and identified the driver as defendant and the passenger as Thyrone Wilson. (Id.). The trooper issued a written warning and allowed the driver and passenger to leave the scene in the automobile. (Id.). Naprava testified that he did not recall what sort of a warning he issued. (Id. at 36). Since the state police did not keep records of warnings issued for more than six months, he had been unable to locate any record confirming that he issued the warning. (Id.).

The question here is whether police had probable cause to stop defendant on January 24, 2007. Defendant contends that any identification of him as the driver of the Gallant should be suppressed because police lacked probable cause to pull him over on that night. "A warrantless arrest of an individual in a public place for a felony, or a misdemeanor committed in the officer's presence, is consistent with the

Fourth Amendment if the arrest is supported by probable cause." Maryland v. Pringle, 540 U.S. 366, 370 (2003). Probable cause exists when "the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense." Beck v. Ohio, 379 U.S. 89, 91 (1964).

Here, officers had probable cause to stop defendant. The facts adduced at the hearing indicate that Trooper Gill and the surveillance officers had witnessed an exchange between the driver of a green Mitsubishi and a confidential informant in the CVS parking lot. Troopers had used this informant successfully in the past for controlled purchases, and the informant had arranged to purchase drugs on this occassion. The informant had been searched before attempting to make a controlled drug buy, and officers reasonably believed that he had no contraband with him when he made contact with the driver of that car. The surveillance officers followed that car, while Trooper Gill spoke with the informant and discovered that he had indeed received crack cocaine from his contact in the parking lot. As the surveillance officers continued to follow the Mitsubishi, Trooper Gill radioed the nearest State Patrol barracks and informed officers of the circumstances and asked for the car to be stopped. Gill's call related to Trooper Naprava the circumstances of the surveillance, a description of the car and its registration, and a request that the vehicle be stopped and its passengers identified. Trooper Naprava, after verifying

6

with the officers who tailed the Mitsubishi from the CVS parking lot that he was stopping the correct vehicle, pulled over the plaintiff and obtained identifying information from defendant before issuing a warning and allowing him to leave.

The court finds that these circumstances demonstrate abundant probable cause for the police to stop defendant's car. The police observed apparently illegal behavior, followed the car driven by the man who had engaged in that behavior, and stopped that car without ever losing sight of it. A reasonable police officer under these circumstances would reasonably conclude that the occupants of the Mitsubishi had committed an offense. The stop of the car was justified, and the court will deny the defendant's motion to suppress his identification.

### C. Cooperating Witness Identification

The defendant also seeks suppression of an identification of him by a cooperating witness on January 25, 2007. This witness at first denied knowing the defendant, but identified him as a source for cocaine after being shown a photograph of him. Defendants contends that this procedure was both suggestive and unreliable. The evidence should thus be suppressed, he argues, and the witness precluded from identifying Simelani at trial.

Trooper Gill testified that on January 15, 2007 the Franklin Township Police Department contacted him. (T. at 10). The department indicated it had three people in custody, Jason Mika, Ashley Baldini and Andrew Talia. (Id. at 11). Officers asked Gill to come to the police station and interview these suspecs. (Id.). Gill went to the

7

station and sat in on interviews with the three subjects in custody. (Id.). He questioned Mika and Baldini about their relationships with defendant. (Id.). Gill reported that he had asked Baldini if she knew who "E" was; she initially denied any knowledge of him. (Id.). Later in the interview, however, she admitted that her boyfriend sold drugs for E, that she used drugs, and that she had rented rooms for him. (Id.). This identification of Simelani as "E" apparently came after Gill showed Baldini a photograph of defendant. (Id. at 26). Gill showed Baldini a series of around ten photographs from his case file of various individuals suspected of involvement in the alleged drug ring. (Id. at 12). He asked Baldini if she knew any of those individuals, and she identified some. (Id.). Gill showed her a photograph of defendant, and she identified him as "E." (Id.). The court finds no reason to suppress this identification.

"A due process violation can result when an identification procedure is so suggestive that it undermines the reliability of the resulting identification." United States v. Lawrence, 349 F.3d 109, 115 (3d Cir. 2003). "An identification procedure that is both (1) unnecessarily suggestive and (2) creates a substantial risk of misidentification violates due process." United States v. Brownlee, 454 F.3d 131, 137 (3d Cir. 2006). In the context of a photographic identification, due process is denied "when police attempt to emphasize the photograph of a given suspect, or when the circumstances surrounding the array unduly suggest who [the] witness should select." Lawrence, 349 F.3d at 115. Still, in determining whether the

8

circumstances of an identification violated due process, a court must "examine the totality of the circumstances." Id. Even if the court finds the procedures unnecessarily suggestive the evidence is still admissible "'so long as the identification possesses sufficient aspects of reliability.'" Brownlee, 454 F.3d at 139 (quoting Manson v. Brathwaite, 482 U.S. 98, 106 (1977)). Among the factors courts use to determine whether the identification is sufficiently reliable are "(1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation." Id.

The court will deny the defendant's motion. The court notes that the purpose of the instant procedure was different from the typical photo identification. Police were not searching for the identity of an unknown perpetrator of a particular crime, like an armed robber or a rapist, as they were in Brownlee. They did not ask a crime victim to point out a mysterious assailant from a set of photographs. Instead, police sought to expand their investigation of an alleged drug conspiracy by identifying relationships between participants in that conspiracy. After an initial reluctance, the witness admitted to knowing Defendant Simelani, informing the police that her boyfriend sold drugs for him and that she had rented rooms for him. While the witness at first denied knowing the defendant, no evidence indicates that she was uncertain about whether the photograph she saw depicted him once she admitted

9

their relationship. Given this prior close knowledge of and relationship to the defendant, Baldini's identification of defendant possesses sufficient aspects of reliability for the court to conclude that the evidence should be admitted. The court will deny the defendant's motion on this point as well.

**Conclusion**

For the reasons stated above, the court will deny the defendant's motion to suppress and sever defendants. In addition, defendant filed various pro se motions during the pendency of the case. He is represented by an attorney and was represented by an attorney when he filed those motions. Since defendant has representation, his motions should come through his attorney, and the court will deny defendant's pro se motions. An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES | : | No. 3:07cr144-1 |
| v. | : | (Judge Munley) |
| IMANI SIMELANI, | : | |
| Defendant | : | |

## MEMORANDUM

**AND NOW**, to wit, this 7th day of August 2009, the defendant's motion to suppress evidence and sever defendants (Doc. 143) is hereby **DENIED**. The defendant's pro se motions (Docs. 244, 283, 287) are also hereby **DENIED**.

BY THE COURT:

s/ James M. Munley
**JUDGE JAMES M. MUNLEY**
**UNITED STATES DISTRICT COURT**